# IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | **CRIMINAL NO: 5:23-CR-04004** |
| v. | |
| | **DEFENDANT'S TRIAL BRIEF** |
| **KIM PHUONG TAYLOR,** | |
| *Defendant.* | |

**COMES NOW** the Defendant, Kim Taylor, by and through her attorney F. Montgomery Brown, and submits the following trial brief to the court.

## OFFENSES CHARGED

Counts 1-26 charge violations 52 USC Section 10307(c)- False Information in Registering and Voting. Counts 27-29 charge 52 USC Section 20511(2)(A)- Fraudulent Registration. Counts 30-52 charge Fraudulent Voting in violation of 52 USC Section 20511(2)(B). Ms. Taylor is charged as principal and aiding abetting under 18 USC Section 2 in all 52 counts.

Section 10307 provides in relevant part:

**(c) False information in registering or voting; penalties**
Whoever knowingly or willfully gives false information as to his name, address or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, or conspires with another individual for the purpose of encouraging his false registration to vote or illegal voting, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: *Provided, however,* That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

Section 20511 provides in relevant part:

## § 20511. Criminal penalties

A person, including an election official, who in any election for Federal office--
**(2)** knowingly and willfully deprives, defrauds, or attempts to deprive or defraud the residents of a State of a fair and impartially conducted election process, by--
**(A)** the procurement or submission of voter registration applications that are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held; or …

shall be fined in accordance with Title 18 (which fines shall be paid into the general fund of the Treasury, miscellaneous receipts (pursuant to section 3302 of Title 31), notwithstanding any other law), or imprisoned not more than 5 years, or both.

Relevant case law is not particularly voluminous. See *United States v. Boards*, 10 F.3d 587 (8th Cir. 1994); United States v. Smilowitz, 974 F.3d 155 (2nd Cir. 2020).

## AIDING AND ABETTING

The Eighth Circuit uniform criminal jury instruction for Aiding and Abetting provides:

5.01 AIDING AND ABETTING (18 U.S.C. ' 2(a))1 A person may [also]2 be found guilty of (insert principal offense) even if [he] [she] personally did not do every act constituting the offense charged,3 if [he] [she] aided and abetted the commission of (describe principal offense). In order to have aided and abetted the commission of a crime a person must [, before or at the time the crime was committed,]:4 (1) have known (describe principal offense) was being committed or going to be committed; (2) have had enough advance knowledge of the extent and character of [specify the crime] that [he][she] was able to make the relevant choice to walk away from [specify the crime] before all elements of (insert principal offense) were complete; 5 [and] (3) have knowingly acted in some way for the purpose of [causing] [encouraging] [aiding] the commission of (describe principal offense)[.] [; and] [(4) have [intended] [known] (insert mental state required by principal offense).]6 For you to find the defendant guilty of (insert principal offense) by reason of aiding and abetting, the [government] [prosecution] must prove beyond a reasonable doubt that all of the elements of (describe principal offense) were committed by some person or persons and that the defendant aided and abetted the commission of that crime. You may infer the defendant had the requisite advance knowledge of the (insert contested element of the principal offense, e.g., knowing possession of a firearm in furtherance of a crime) if you find the defendant failed to object or withdraw from actively participating in the commission of (insert principal offense) after the defendant observed another participant complete (insert contested element of the principal offense).7 [You should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has become an aider and abettor. A person who has no knowledge that a crime is being committed or about to be committed, but who happens to act in a way which advances some offense, does not thereby become an aider and abettor.]

In summary, to find Ms. Taylor criminal liable for the acts of principals other than herself, the government must prove all of the elements of 52 USC Section 10307(c), 20511(2)(A) and 20511(2)(B) were committed beyond a reasonable doubt by the residents who signed various voting documents for other family members. (Indictment ¶ 20) These "residents" who signed for other family members are not specified in the Indictment. Their identities are known from discovery availability.

**"LAWS OF THE STATE"**

The government has sent Ms. Taylor through her counsel notice by email of alleged underlying State of Iowa "laws of the State" violated. The indictment does not specify any laws of the State. Ms. Taylor intends to object to allegation of violation of the laws of the State or jury instruction on such laws as a constructive amendment of the Indictment in violation of her Fifth Amendment right to presentation to the grand jury and indictment on any such States laws by the grand jury. "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007). This often occurs "through the evidence presented at trial or the jury instructions." Id. A constructive amendment to an indictment implicates a defendant's grand jury right under the Fifth Amendment. *United States v. Jarrett*, 684 F.3d 800, 802 (8th Cir. 2012); *United States v. Renner,* 648 F.3d 680, 685 (8th Cir.2011) ("Essentially, 'a constructive amendment changes the charge' and 'affects the defendant's Fifth Amendment right to indictment by a grand jury.'").

To the extent that *voting* "laws of the State" are encompassed by the Indictment and the federal criminal statutory provisions, as opposed to government attempting to incorporate by email

notice a State of Iowa criminal law (Iowa Code Section **39A.2 Election misconduct in the first degree),** Ms. Taylor contends there is a significant distinction for purpose of her Fifth Amendment right to have her charges considered by a grand jury and properly indicted by a grand jury.

A federal criminal statute should not be construed to duplicate state offenses unless Congress has plainly exhibited its intention to do so. Congress cannot provide for the punishment of a violation of the laws of a state justiciable only in its courts. *United States v. Hall*, 98 U.S. 343, 345, 25 L.Ed. 180. "It may, in certain cases having a federal aspect or relevance, make the violation of state laws an element of a federal offense, but the courts cannot do so by construction. They cannot group two or more laws together to find enough in the assemblage to fit the conduct of defendants." *Butterfield v. United States,* 241 F. 556 (8th Cir. 1917)(see also Necessary and Proper Clause, U.S. Const., Art. I Section 8, cl. 18).

The government has emailed the following alleged State laws:

### 48A.7A. Election day and in-person absentee registration

1. a. A person who is eligible to register to vote and to vote may register on election day by appearing in person at the polling place for the precinct in which the individual resides and completing a voter registration application, making written oath, and providing proof of identity and residence.

b. (1) For purposes of this section, a person may establish identity and residence by presenting to the appropriate precinct election official a current and valid Iowa driver's license or Iowa nonoperator's identification card or by presenting any of the following current and valid forms of identification if such identification contains the person's photograph and a valid expiration date:

(a) An out-of-state driver's license or nonoperator's identification card.

(b) A United States passport.

(c) A United States military or veterans identification card.

(d) An identification card issued by an employer.

(e) A student identification card issued by an Iowa high school or an Iowa postsecondary educational institution.

(f) A tribal identification card or other tribal enrollment document issued by a federally recognized Indian tribe or nation, if the tribal identification card or other tribal enrollment document is signed before the card or document is presented to the election official.

(2) If the photographic identification presented does not contain the person's current address in the precinct, the person shall also present one of the following documents that shows the person's name and current address in the precinct, and the document must be dated, or describe terms of residency current to, within forty-five days prior to presentation:

(a) Residential lease.

(b) Property tax statement.

(c) Utility bill.

(d) Bank statement.

(e) Paycheck.

(f) Government check.

(g) Other government document.

c. In lieu of paragraph "b", a person wishing to vote may establish identity and residency in the precinct by written oath of a person who is registered to vote in the precinct. Before signing an oath under this paragraph, the attesting registered voter shall present to the precinct election official proof of the voter's identity, as described in section 49.78, subsection 2 or 3. The registered voter's oath shall attest to the stated identity of the person wishing to vote and that the person is a current resident of the precinct. The oath must be signed by the attesting registered voter in the presence of the appropriate precinct election official. A registered voter who has signed an oath on election day attesting to a person's identity and residency as provided in this paragraph is prohibited from signing any further oaths as provided in this paragraph on that day.

2. The oath required in subsection 1, paragraph "a", and in paragraph "c", if applicable, shall be attached to the voter registration application.

3. At any time before election day, and after the deadline for registration in section 48A.9, a person who appears in person at the commissioner's office or at a satellite absentee voting station or whose ballot is delivered to a health care facility pursuant to section 53.22 may register to vote and vote an absentee ballot by following the procedure in this section for registering to vote on election day. A person who wishes to vote in person at the polling place on election day and who has not registered to vote before the deadline for registering in section 48A.9, is required to register to vote at the polling place on election day following the procedure in this section. However, the person may complete the voter registration application at the commissioner's office and, after the commissioner has reviewed the completed application, may present the application to the appropriate precinct election official along with proof of identity and residency.

4. a. The form of the written oath required of the person registering under this section shall read as follows:

I, (name of registrant), do solemnly swear or affirm all of the following:

I am a resident of the ......... precinct, ....... ward or township, city of ........., county of ........., Iowa.

I am the person named above.

I live at the address listed below.

I do not claim the right to vote anywhere else.

I have not voted and will not vote in any other precinct in this election.

I understand that any false statement in this oath is a class "D" felony punishable by no more than five years in confinement and a fine of at least seven hundred fifty dollars but not more than seven thousand five hundred dollars.

........................

Signature of Registrant

........................

Address

........................

Telephone (optional to provide)

Subscribed and sworn before me on ......... (date).

.....................

Signature of Precinct Election Official

b. The form of the written oath required of a person attesting to the identity and residency of the registrant shall read as follows:

I, ..... (name of registered voter), do solemnly swear or affirm all of the following:

I am a preregistered voter in this precinct or I registered to vote in this precinct today, and a registered voter did not sign an oath on my behalf. I have not signed an oath attesting to the identity and residence of any other person in this election.

I am a resident of the ... precinct, ... ward or township, city of ....., county of ....., Iowa.

I reside at ....... (street address) in ..... (city or township).

I personally know ..... (name of registrant), and I personally know that ..... (name of registrant) is a resident of the ... precinct, ..... ward or township, city of ....., county of ....., Iowa.

I understand that any false statement in this oath is a class "D" felony punishable by no more than five years in confinement and a fine of at least seven hundred fifty dollars but not more than seven thousand five hundred dollars.

.........................

Signature of Registered Voter

Subscribed and sworn before me on .................. (date).

................

Signature of Precinct Election Official

5. a. If a person registers to vote under this section at a polling place that has access to an electronic poll book, the precinct election official shall verify against a database maintained by the state commissioner that the person has not been convicted of a felony or, if the person has been convicted of a felony, the person has had the person's voting rights restored. If the precinct election official determines that the person has not been convicted of a felony or has been convicted of a felony but the person's voting rights have been restored, the precinct election official shall furnish a ballot to the voter. If the database indicates that the person has been convicted of a felony and that the person's voting rights have not been restored, the precinct election official shall challenge the person under section 49.79.

b. If a person registers to vote under this section at a polling place that does not have access to an electronic poll book, the person shall be permitted to cast a provisional ballot under section 49.81, and the absentee and special voters precinct board, appointed pursuant to section 53.23, shall verify against a database maintained by the state commissioner that the person has not been convicted of a felony or, if the person has been convicted of a felony, the person's voting rights have been restored. If information in the database indicates that the person has not been convicted of a felony or, if the person has been convicted of a felony, the person's voting rights have been restored, the voter's provisional ballot shall be counted. If the database indicates that the person has been convicted of a felony and the person's voting rights have not been restored, the voter's provisional ballot shall be rejected.

## 39A.2 Election misconduct in the first degree

1. A person commits the crime of election misconduct in the first degree if the person

willfully commits any of the following acts:

a. Registration fraud.

(1) Produces, procures, submits, or accepts a voter registration application that is known

by the person to be materially false, fictitious, forged, or fraudulent.

(2) Falsely swears to an oath required pursuant to section 48A.7A.

b. Vote fraud.

(1) Destroys, delivers, or handles an application for a ballot or an absentee ballot with the

intent of interfering with the voter's right to vote.

(2) Produces, procures, submits, or accepts a ballot or an absentee ballot, or produces,

procures, casts, accepts, or tabulates a ballot that is known by the person to be materially

false, fictitious, forged, or fraudulent.

(3) Votes or attempts to vote more than once at the same election, or votes or attempts to

vote at an election knowing oneself not to be qualified.

(4) Makes a false or untrue statement in an application for an absentee ballot or makes

or signs a false certification or affidavit in connection with an absentee ballot.

(5) Otherwise deprives, defrauds, or attempts to deprive or defraud the citizens of this state of a fair and impartially conducted election process.

* * *

2. Election misconduct in the first degree is a class "D" felony.

## COUNTS SUMMARY

Counts 1-52 apply to the following voting relating documents and "voters".

| Count | Voter | Voting Document | Date |
|---|---|---|---|
| 1 | TTD | Absentee Ballot Request | 5/20/2020 |
| 2 | TLD | Voter Registration Form | 5/20/2020 |
| 3 | TLD | Absentee Ballot Request | 5/20/2020 |
| 4 | TTD | Absentee Ballot/Affidavit (P) | 6/1/2020 |
| 5 | TLD | Absentee Ballot/Affidavit (P) | 6/1/2020 |
| 6 | TTD | Absentee Ballot Request | 9/18/2020 |
| 7 | TLD | Absentee Ballot Request | 9/19/2020 |
| 8 | TTD | Absentee Ballot/Affidavit (G) | 10/16/2020 |
| 9 | TLD | Absentee Ballot/Affidavit (G) | 10/16/2020 |
| 10 | NP | Absentee Ballot Request | 5/21/2020 |
| 11 | TP | Absentee Ballot Request | 5/21/2020 |
| 12 | TP | Absentee Ballot/Affidavit (P) | 6/1/2020 |

| Count | Voter | Voting Document | Date |
|---|---|---|---|
| 13 | NP | Absentee Ballot/Affidavit (P) | 6/2/2020 |
| 14 | NP | Absentee Ballot Request | 9/18/2020 |
| 15 | TP | Absentee Ballot Request | 9/19/2020 |
| 16 | YN | Voter Registration Form | 4/18/2020 |
| 17 | YN | Absentee Ballot Request | 4/18/2020 |
| 18 | YN | Absentee Ballot/Affidavit (P) | 5/19/2020 |
| 19 | YN | Absentee Ballot Request | 9/18/2020 |
| 20 | NH | Absentee Ballot Request | 5/9/2020 |
| 21 | NH | Absentee Ballot/Affidavit (P) | 6/1/2020 |
| 22 | AL1 | Voter Registration Form | 4/7/2020 |
| 23 | AL1 | Absentee Ballot/Affidavit (P) | 5/19/2020 |
| 24 | AL2 | Absentee Ballot Request | 9/27/2020 |
| 25 | AL1 | Absentee Ballot/Affidavit (G) | 10/16/2020 |
| 26 | AL2 | Absentee Ballot/Affidavit (G) | 10/16/2020 |

| 27 | AL1 | Voter Registration Form | 4/7/2020 |
|---|---|---|---|
| 28 | YN | Voter Registration Form | 4/18/2020 |
| 29 | TLD | Voter Registration Form | 5/20/2020 |

| 30 | TTD | Absentee Ballot Request | 5/20/2020 |
|---|---|---|---|
| 31 | TLD | Absentee Ballot Request | 5/20/2020 |
| 32 | TTD | Absentee Ballot/Affidavit (P) | 6/1/2020 |
| 33 | TLD | Absentee Ballot/Affidavit (P) | 6/1/2020 |
| 34 | TTD | Absentee Ballot Request | 9/18/2020 |
| 35 | TLD | Absentee Ballot Request | 9/19/2020 |
| 36 | TTD | Absentee Ballot/Affidavit (G) | 10/16/2020 |
| 37 | TLD | Absentee Ballot/Affidavit (G) | 10/16/2020 |

| 38 | NP | Absentee Ballot Request | 5/21/2020 |
|---|---|---|---|
| 39 | TP | Absentee Ballot Request | 5/21/2020 |
| 40 | TP | Absentee Ballot/Affidavit (P) | 6/1/2020 |
| 41 | NP | Absentee Ballot/Affidavit (P) | 6/2/2020 |
| 42 | NP | Absentee Ballot Request | 9/18/2020 |
| 43 | TP | Absentee Ballot Request | 9/19/2020 |
| 44 | YN | Absentee Ballot Request | 4/18/2020 |
| 45 | YN | Absentee Ballot/Affidavit (P) | 5/19/2020 |
| 46 | YN | Absentee Ballot Request | 9/18/2020 |
| 47 | NH | Absentee Ballot Request | 5/9/2020 |
| 48 | NH | Absentee Ballot/Affidavit (P) | 6/1/2020 |
| 49 | AL1 | Absentee Ballot/Affidavit (P) | 5/19/2020 |
| 50 | AL2 | Absentee Ballot Request | 9/27/2020 |
| 51 | AL1 | Absentee Ballot/Affidavit (G) | 10/16/2020 |
| 52 | AL2 | Absentee Ballot/Affidavit (G) | 10/16/2020 |

## ELEMENTS OF THE OFFENSE

Each of the statutes at issue has as an element a mental state of knowingly and willfully or willfulness. 52 U.S.C. §§ 10307(c), 20511(2)(A), 20551(2)(B). Ms. Taylor contends that in this context of extremely complicated election law, exercise of constitutionally protected election rights, and rights under the Voting Rights Act to assistance of others in voting, the statutory provisions charged here require higher proof of willfulness as they are "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan v. United States*, 524 U.S. 184, 194-95, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)(see also *United States v. Benton*, 890 F.3d 697 (8th Cir. 2018)(Trial court's instruction that "A person acts willfully if he acts knowingly, purposely, and with the intent to do something the law forbids. That is, a person acts willfully when they act with the purpose to disobey or to disregard the law. A person need not be aware of the specific law or rule that his conduct may be violating, but he must act with the intent to do something that he knows the law forbids" was not an abuse of discretion as Benton has not shown that this case falls within such an exception).

Section 20511 in particular goes on to state that the defendant must submit ballot applications or ballots that are "*known* by the person to be materially false, fictitious, or fraudulent *under the laws of the State*." *Id.* §§ 20511(2)(A), 20551(2)(B). As the Supreme Court has explained, it "normally read[s] the statutory term 'knowingly' as applying to all subsequently listed elements of the crime." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019). Ms. Taylor contends that the government must prove that she knew at least the general nature of the acts prohibited under Title 52 and acted with specific intent to violate those statutory provisions or specific intent to defraud the State in the federal election. Ms. Taylor argues that the government has to prove she knew and intended to act with respect to the registrations, applications and/or ballot were

completed "in a 'manner not authorized by the statutes or regulations'" of the State of Iowa. *See id.* at 2198 (quoting *Liparota v. United States*, 471 U.S. 419, 425 (1985)). In the context of Title 52 as charged in this case, Ms. Taylor contends that "[a]n act is done 'willfully' if done voluntarily and intentionally with the purpose of violating a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *United States v. Jerde*, 841 F.2d 818, 821 (8th Cir. 1988).

If as to a particular count the government asserts she was the aider and abettor, then they have to prove that the principal acted with the requisite knowledge and willfulness and Ms. Taylor had knowledge of the principal's specific intent.

Ms. Taylor will submit proposed instructions in accordance with the foregoing interpretation of the requisite mental elements. Ms. Taylor may propose the following theory of defense instruction in addition to a general "Good Faith" instruction:

## KNOWINGLY AND WILLFULLY

The offenses charged in Counts 1 through 52 of the Indictment require proof beyond a reasonable doubt that Kim Taylor acted "knowingly" and "willfully." These intent elements require proof both that the defendant acted in violation of the laws of the United States and State of Iowa when she procured signed voter registration applications, absentee ballot requests, and absentee ballots, or delivered signed voter registration applications, absentee ballot requests, and absentee ballots, and that the defendant knew she was violating applicable laws and willfully violated them. As a general rule, Iowa law allows for one person to sign a document for another person with that person's knowledge and consent. If federal and State of Iowa election law requires that the signatory himself or herself sign the document, the government must still prove that Kim Taylor knew that the document applicable to any count was signed by someone other than the person whose name appears on the document, but also that Kim Taylor knew that it was unlawful for one person to sign that document for another person even if signed with that other person's knowledge and consent.

If you find that the document at issue in a given count of the indictment was signed by someone other than the person whose name appears on the document and you find that the defendant knew that it was unlawful for one person to sign that document for another person even with that other person's consent, then you must find that the government has proven this element knowledge and willfulness applicable to that count of the indictment. If, however, you find that the document charged in a count of the indictment was signed by a person other than the person

whose name appears on the document but you find that the government has failed to prove beyond a reasonable doubt that defendant Kim Taylor knew that it was unlawful for one person to sign a document for another person, then you must find the defendant Kim Taylor not guilty of that count.

An "agency relationship" is recognized by Iowa law.

> "Agency ... results from (1) manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to the former's control and, (2) consent by the latter to so act." *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 38 (Iowa 1977). An agency relationship can be established through the agent's actual or apparent authority to act on behalf of the principal. *Fed. Land Bank of Omaha v. Union Bank & Trust Co. of Ottumwa*, 228 Iowa 205, 209–10, 290 N.W. 512, 514–15 (1940).
>
> The Restatement (Third) of Agency states:
>
> Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.
>
> Restatement (Third) of Agency § 1.01, at 17 (2006). Pursuant to this definition, the principal and the agent must mutually manifest assent to the agency relationship before agency is created.

*Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 101 (Iowa 2011)

"Manifestations of assent include written or spoken words or other conduct and may be inferred from surrounding facts and circumstances. *Id.* at 101. For example, an agent may manifest assent merely by performing actions he or she has been empowered by the principal to perform or carrying out actions that objectively benefit the principal." *Hutchinson v. Shull*, 878 N.W.2d 21, 235 (Iowa 2016). As a general rule, Iowa law allows one person to sign for another person whether or not in the presence of that person. *Conner v. Henry*, 207 N.W. 119, 120 (1926) (explaining that "[a] signature is the genuine signature of the person whose signature it purports to be . . . when it is placed by some other person, but the authority or direction of the person who signature it purports to be, or when it is placed by the knowledge and consent of the person whose authority it

purports to be"). Iowa election law may override this general rule and provides that "[a] signature, when required by law, must be made by the writing or markings of the person whose signature is required." Iowa Code § 39.3(17).

Ms. Taylor believes from the discovery including grand jury testimonies that familial witnesses relevant to individual counts of the Indictment have and will claim agency relationship with their adult children in the matters relating to voting activities. This agency relationship stems from apparently long-standing cultural relationship between Vietnamese-American parents and their children. The witnesses have testified to this previously. To the extent the government contends a parent or older family member were in error or exceeded their authorities as to their right to assist their adult children in filling out voting forms, absentee ballot requests or even ballots, any such mistake of fact is on the parent/family member, not Ms. Taylor.

## GOOD FAITH INSTRUCTION

9.08A GOOD FAITH (FRAUD CASES) One of the issues in this case is whether the defendant acted in good faith. Good faith is a complete defense to the crime of [KNOWINGLY AND WILLFULLY ENGAGING IN FRAUDLENT VOTING REGISTRATION AND VOTING] [mail] [wire] [bank] [health care] [securities] fraud if the defendant did not act with [the intent to defraud] [the intent to obtain money or property by means of false or fraudulent pretenses, representations, or promises], which is an element of the charge.1 The essence of the good faith defense is that one who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent.2 Good faith includes, among other things, an opinion or belief that is honestly held, even if the opinion is in error or the belief is mistaken.3 However, even though a defendant honestly held a certain opinion or belief (such as a belief that a business venture would ultimately succeed, that investors would make a profit, or that investors would not lose money), a defendant does not act in good faith if he or she also knowingly made false or fraudulent VOTING REGISTRATION, ABSENTEE BALLOT REQUESTS AND BALLOTS representations or promises, or otherwise acted with the intent to defraud or deceive THE WOOBURY COUNTY ELECTION OFFICIALS.4 Proof of fraudulent intent requires more than proof that a defendant only made a mistake in judgment or management, or was careless.5 The [government] [prosecution] has the burden of proving beyond a reasonable doubt that the defendant acted with the [the intent to defraud] THE WOODBURY COUNTY ELECTION OFFICE OR OFFICIALS [the intent to obtain money or property by means of false or

~~fraudulent pretenses, representations, or promises~~].6 Evidence that the defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not the defendant acted with [the intent to defraud] [~~the intent to obtain money or property by means of false or fraudulent pretenses, representations, or promises].7 Notes on Use 1. See Instruction 6.18.1341 which defines "intent to defraud" in the context of mail fraud. 2. See United States v. Brown, 478 F.3d 926, 928 (8th Cir. 2007) (wire fraud) (quoting United States v. Sherer, 653 F.2d 334, 338 (8th Cir. 1981)) (mail fraud); see also United States v. Rice, 449 F.3d 887, 896 (8th Cir. 2006) (false statement); United States v. Ammons, 464 F.2d 414, 417~~

## VOTER REGISTRATION ACTIVITIES & BALLOT COLLECTION

The right to vote is a fundamental matter in a free and democratic society, Reynolds v. Sims, 377 U.S. 533, 554–55, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

Ms. Taylor contends that various get-out-the-vote and "voter registration activities" she engaged in are protected by the First Amendment and various provisions of federal and State of Iowa law, including provisions of the Voting Rights Act. Specifically, but without limitation, she asserts that assisting others in registering to vote, obtaining absentee ballots, filling those registration and absentee ballot requests out with residents information, and even marking a ballot itself, were legal acts. Ms. Taylor engaged in protected speech and protected expressive activity if she encouraged voter participation and/or encourage or suggested voting for conservative candidates such as former President Trump and her own husband.

Ms. Taylor asserts that:

"public endeavors to assist people with voter registration are intended to convey a message that voting is important, that the Plaintiffs believe in civic participation, and that the Plaintiffs are willing to expend the resources to broaden the electorate to include allegedly under-served communities," and thus is expressive conduct which implicates the First Amendment. Am. Ass'n of People with Disabilities v. Herrera, 690 F. Supp. 2d 1183, 1215–16 (D.N.M. 2010), recons. on separate grounds, No. CIV 08-0702 JB/WDS, 2010 WL 3834049 (D.N.M. July 28, 2010); see also Voting for Am., Inc. v. Steen, 732 F.3d 382, 389 (5th Cir. 2013) ("The state does not deny that some voter registration activities involve speech—'urging' citizens to register; 'distributing' voter registration forms; 'helping' voters to fill out their forms ...." (emphasis added)); Tenn. State Conf. of NAACP v.

Hargett, 420 F. Supp. 3d 683, 704 (M.D. Tenn. 2019) (finding voter registration assistance regulations must be "substantially related to important governmental interests" to survive "exacting scrutiny" (internal quotation marks omitted) (quoting Buckley v. Am. Constitutional L. Found., Inc., 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999))) *Democracy North Carolina v. North Carolina State Board of Elections*, 590 F.Supp.3d 850, 862 (M.D.N.C. 2022)(See Also *Priorities USA v. Nessel*, 462 F.Supp. 3d 792, 810 (E.D. Mich. 2020).

Ms. Taylor is not suggesting that she is protected by the First Amendment from personally "forging" the signature of a resident on a voter registration form, or voter on an absentee ballot request or sealed ballot certification. Forging of a ballot signature has been held to be a VRA crime. *United States v. Boards*, 10 F.3d 587 (8th Cir. 1994) The "forgery" by Ms. Taylor scenario, which she denies, is a different question from whether she knew anything was illegal about a parent/grandparent acting in some form of culture-related *in loco parentis* for any adult child or as the authorized agent for any adult child in signing a voter registration form, or signed an absentee ballot request or signed a sealed ballot certification. Generic forgery under Iowa law requires an act without authorization. Iowa Code section 715A.2(1) (1989), defines forgery in various ways, and subsection (b) provides that a person is guilty of forgery if, with intent to defraud or injure anyone, the person:

Makes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize that act ...

The "forgery" by Ms. Taylor scenario, which she denies, is also a different question from the aiding and abetting another who signed a particular voting document in some other voter's name. The aiding and abetting question is whether she knew it was illegal as an aider and abettor to deliver voting materials if she had exact knowledge or reasonably should have known that a parent/grandparent acting in culture-related *in loco parentis* for any adult child or as the

unauthorized agent for any adult child, signed a voter registration form, or an absentee ballot request or signed a sealed ballot certification.

Second, at the time of the elections in 2020, any taking of the absentee ballots to the U.S. Post Office or to the Woodbury County Auditor's office or legal drop-box by a third party was not prohibited by law. *Democratic Senatorial Campaign Committee, Democratic Congressional Campaign Committee, and Iowa Democratic Party v. Iowa Secretary of State Paul Pate*, 950 N.W.2d 1, 6 (Iowa Oct. 14, 2020)(citing Iowa Code Section 53.17(1)(o)). The Iowa Supreme Court ruled on October 14, 2020 that Woodbury County Auditor Patrick Gill, who is a witness in this case, violated the law in electronically prepopulating absentee ballot applications. See also *Republican National Committee, et al. v. Patrick Gill, Auditor of Woodbury County, Iowa, Woodbury County,* No. EQCV193154.

Iowa Code Section 53.33 (Unlawful Return of Ballot) was approved by the legislature, effective June 8, 2021. Section 53.33 provides limitation not applicable to Ms. Taylor in 2020.

The Indictment does not specifically allege that either federal or Iowa had provisions of the type sometimes called "Request Assistance Bans" or "Ballot Delivery Restrictions". (*See Generally, Democracy North Carolina v. North Carolina State Board of Elections*, 590 F.Supp.3d 850, 862 (M.D.N.C. 2022). To the extent the government contends that Ms. Taylor was generally banned from assisting in voting activities and returning ballots, the government is in error and the government should be prevented *in limine* from stating, asserting or implying to the contrary.

To this end, some discussion of voting rights provisions is necessary in the extremely complex area of fact and law.

Many of the Vietnamese-American voters involved in this case will reasonably be deemed "208-voters" under the Voting Rights Act. To the extent they are called as government witnesses

in this case they will need interpreters and will, it is anticipated, admit difficulties in reading or understand written English language forms including the forms at issue. Under Section 208 of the Voting Rights Act, "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write [("208-voters")] may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

> The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

Id. § 10310(c)(1).

If Ms. Taylor assisted language-deficient Vietnamese-American in filling out voter registration forms, absentee ballot requests and some portion of actual absentee ballots, this was activity protected by the VRA by the VRA's unambiguous language: "'[t]o vote,' therefore, plainly contemplates more than the mechanical act of filling out the ballot sheet. It includes steps in the voting process before entering the ballot box, 'registration,' and it includes steps in the voting process after leaving the ballot box, 'having such ballot counted properly.' " *Democracy North Carolina v. North Carolina State Board of Elections*, 590 F.Supp.3d 850, 871 (M.D.N.C. 2022)(citations omitted).

The reason Woodbury County election materials such as voter registration forms, absentee ballot requests, absentee ballots or actual ballots are English-only is because Iowa is an English-only state, See Iowa Code Section 1.18 (Iowa English language reaffirmation), and the VRA provisions for language-specific voting materials is conditioned upon complicated covered political subdivision and population frequency rules. Georgia Association of Latino elected

Officials, Inc. v. Gwinnett County Board of Registration and Elections, 36 F.4th 1100 (11th Cir. 2022). Specifically, Section 203 of the Voting Rights Act provides for certain circumstances in voting documents shall be in the language of a minority group only if the locale has over 10,000 or over 5 percent of the total voting age citizens who are members of a single language minority group. 52 USC Section 10503 No county in Iowa including Woodbury County apparently qualifies. Federal Register Vol. 86, No. 288 (Voting Rights Act Amendments of 2006, Determinations Under Section 203). The USDOJ is charged with enforcing Section 203 of VRA.

52 USC Section 10503 provides in relevant part:

**(a) Congressional findings and declaration of policy**
The Congress finds that, through the use of various practices and procedures, citizens of language minorities have been effectively excluded from participation in the electoral process. Among other factors, the denial of the right to vote of such minority group citizens is ordinarily directly related to the unequal educational opportunities afforded them resulting in high illiteracy and low voting participation. The Congress declares that, in order to enforce the guarantees of the fourteenth and fifteenth amendments to the United States Constitution, it is necessary to eliminate such discrimination by prohibiting these practices, and by prescribing other remedial devices.
**(b) Bilingual voting materials requirement**
**(1) Generally**
Before August 6, 2032, no covered State or political subdivision shall provide voting materials only in the English language.
**(2) Covered States and political subdivisions**
**(A) Generally**
A State or political subdivision is a covered State or political subdivision for the purposes of this subsection if the Director of the Census determines, based on the 2010 American Community Survey census data and subsequent American Community Survey data in 5-year increments, or comparable census data, that--
**(i)(I)** more than 5 percent of the citizens of voting age of such State or political subdivision are members of a single language minority and are limited-English proficient;
**(II)** more than 10,000 of the citizens of voting age of such political subdivision are members of a single language minority and are limited-English proficient; or
**(III)** in the case of a political subdivision that contains all or any part of an Indian reservation, more than 5 percent of the American Indian or Alaska Native citizens of voting age within the Indian reservation are members of a single language minority and are limited-English proficient; and
**(ii)** the illiteracy rate of the citizens in the language minority as a group is higher than the national illiteracy rate.
**(B) Exception**

The prohibitions of this subsection do not apply in any political subdivision that has less than 5 percent voting age limited-English proficient citizens of each language minority which comprises over 5 percent of the statewide limited-English proficient population of voting age citizens, unless the political subdivision is a covered political subdivision independently from its State.

**(3) Definitions**

As used in this section--

**(A)** the term "voting materials" means registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots;

On June 28, 2023 the district court in Polk County No. CVCV062715, *League of United Latin American Citizens of Iowa v. Iowa Secretary of State, et al*, entered summary judgment in favor of LULAC and dissolving a previous permanent injunction which prohibited the State from providing and accepting voting materials in languages other than English. Judge Rosenberg tracks the history of litigation in this area in Iowa and concluded that "official materials related to voting are a use of language that is "necessary to secure the rights guaranteed by the Constitution and laws of the United States of America of the Constitution of the State of Iowa" Iowa Code Section 1.18(5)(h). The right to vote is not merely the ability to check boxes on a piece of paper. It is about being able to register, understanding what is on the ballot, and knowing when and where voting takes place. All of these facets are furthered by allowing counties to provide and accept voting materials in non-English languages." The State of Iowa has appealed.

To the extent a particular Vietnamese-American asked Ms. Taylor for actual assistance in filling out a ballot, Iowa Code Section 53.15 a appears to authorize such act if the voter "cannot read". Iowa Secretary of State Paul Pate's website says the following in relevant part:

### I NEED HELP FILLING OUT MY BALLOT, CAN SOMEONE HELP ME?

Yes!
1. You may request assistance for marking or casting a ballot. Any voter may declare upon oath that the voter is blind, cannot read the English language, or is, by reason of any physical disability, unable to cast a vote without assistance.

2. Voters may choose any person to assist them, except their employer, employer's agent or an office/agent of their union. Voters may also request assistance from a precinct election official. Two precinct officials, one from each political party, may assist. If a person other than the precinct official assists the voter, the person assisting the voter must sign the Affidavit of Voter Requesting Assistance.

https://sos.iowa.gov/disabilities.html#ballot

52 USC Section 10508 provides:

Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

Moreover, Ms. Taylor was engaged in get-out-the-vote and "voter registration activity" during a period of a global and national COVID pandemic where public policy in the State of Iowa was to encourage absentee voting. Ms. Taylor will have trial exhibits on this point. The Coronavirus Aid, Relief and Economic Security Act (CARES Act) provided financial grant assistance to the States to effectuate safe elections during the 2020 cycle.

Ms. Taylor lawfully engaged in various forms of "Voter registration activity" which means:

11 C.F.R. § 100.24

### § 100.24 Federal election activity (52 U.S.C. 30101(20)).

(a) As used in this section, and in part 300 of this chapter,

(1) In connection with an election in which a candidate for Federal office appears on the ballot means:

(2) Voter registration activity.

(i) Voter registration activity means:

(A) Encouraging or urging potential voters to register to vote, whether by mail (including direct mail), e-mail, in person, by telephone (including pre-recorded telephone calls, phone banks and messaging such as SMS and MMS), or by any other means;

(B) Preparing and distributing information about registration and voting;

I Distributing voter registration forms or instructions to potential voters;

(D) Answering questions about how to complete or file a voter registration form, or assisting potential voters in completing or filing such forms;

I Submitting or delivering a completed voter registration form on behalf of a potential voter;

(F) Offering or arranging to transport, or actually transporting potential voters to a board of elections or county clerk's office for them to fill out voter registration forms; or

(G) Any other activity that assists potential voters to register to vote.

(ii) Activity is not voter registration activity solely because it includes a brief exhortation to register to vote, so long as the exhortation is incidental to a communication, activity, or event. Examples of brief exhortations incidental to a communication, activity, or event include:

(A) A mailer praises the public service record of mayoral candidate X and/or discusses his campaign platform. The mailer concludes by reminding recipients, "Don't forget to register to vote for X by October 1st."

(B) A phone call for a State party fundraiser gives listeners information about the event, solicits donations, and concludes by reminding listeners, "Don't forget to register to vote."

(3) Get-out-the-vote activity.

(i) Get-out-the-vote activity means:

(A) Encouraging or urging potential voters to vote, whether by mail (including direct mail), e-mail, in person, by telephone (including pre-recorded telephone calls, phone banks and messaging such as SMS and MMS), or by any other means;

(B) Informing potential voters, whether by mail (including direct mail), e-mail, in person, by telephone (including pre-recorded telephone calls, phone banks and messaging such as SMS and MMS), or by any other means, about:

(1) Times when polling places are open;

(2) The location of particular polling places; or

(3) Early voting or voting by absentee ballot;

I Offering or arranging to transport, or actually transporting, potential voters to the polls; or

(D) Any other activity that assists potential voters to vote.

(ii) Activity is not get-out-the-vote activity solely because it includes a brief exhortation to vote, so long as the exhortation is incidental to a communication, activity, or event. Examples of brief exhortations incidental to a communication, activity, or event include:

(A) A mailer praises the public service record of mayoral candidate X and/or discusses his campaign platform. The mailer concludes by reminding recipients, "Vote for X on November 4th."

(B) A phone call for a State party fundraiser gives listeners information about the event, solicits donations, and concludes by reminding listeners, "Don't forget to vote on November 4th."

(4) Voter identification means acquiring information about potential voters, including, but not limited to, obtaining voter lists and creating or enhancing voter lists by verifying or adding information about the voters' likelihood of voting in an upcoming election or their likelihood of voting for specific candidates. The date a voter list is acquired shall govern whether a State, district, or local party committee has obtained a voter list within the meaning of this section.

(b) As used in part 300 of this chapter, Federal election activity means any of the activities described in paragraphs (b)(1) through (b)(4) of this section.

(1) Voter registration activity during the period that begins on the date that is 120 calendar days before the date that a regularly scheduled Federal election is held and ends on the date of the election. For purposes of voter registration activity, the term "election" does not include any special election.

(2) The following activities conducted in connection with an election in which one or more candidates for Federal office appears on the ballot (regardless of whether one or more candidates for State or local office also appears on the ballot):

(i) Voter identification.

(ii) Generic campaign activity, as defined in 11 CFR 100.25.

(iii) Get-out-the-vote activity.

...........................................

Ms. Taylor could have helped an unlimited number of residents to register and register voters to request absentee ballots and vote by absentee or in person. See *Arkansas United v. Thurston*, 626 F.Supp.3d 1064 (W.D. ARK Sept. 7, 2022)(statute prohibiting a person helping more than 6 limited-English persons violated the VRA)(Appeal pending).

Ms. Taylor may call fact witnesses, character witnesses and impeachment witnesses to be determined and listed in accordance with the Trial Scheduling Order.

Ms. Taylor intends to object to opinions by any witness, including case agent(s), Woodbury County Auditor Patrick Gill, other county employees or any other person regarding whether a particular writing in evidence was completed by Ms. Taylor with exception of any person who

claims they witnessed Ms. Taylor writing any names, words, address, phone numbers or other information. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Ms. Taylor guesses or anticipates that the government will offer testimony from Patrick Gill, Woodbury County Auditor, that Ms. Taylor's husband's name was written in various ballots during the summer of 2020 election as write-in for auditor. These ballots are apparently not saved or in discovery. The inference from discovery is that Mr. Gill has said or would say these write-ins for Jeremy Taylor were all made by the same person and presumably by Ms. Taylor. Ms. Taylor objects to this testimony as hearsay and improper subject matter of opinion testimony, Rule 403 and *Daubert*.

No notice of expert testimony or handwriting comparison expert has been noticed by the government. To date, no handwriting exemplar has been requested of Ms. Taylor.

A lay witness, may upon proper foundation, identify their own handwriting. Ms. Taylor contends that no witness, other than a witness who claims to have personally observed Ms. Taylor write something, is known to possess potential requisite expertise to express an opinion as to whether or not samples are consistent with one another, written by the same person, or in their opinion written by Ms. Taylor. Ms. Taylor will file a more elaborate Motion in Limine point as to this evidence.

Respectfully submitted,

*S/ F. Montgomery Brown*

F. Montgomery Brown  AT0001209
F.M. Brown Law Firm, P.L.L.C.
1001 Office Park Road, Suite 108
West Des Moines, IA 50265
Telephone: (515) 225-0101
Facsimile: (515) 225-3737
Email: fmbrown@fmbrownlawfirm.com
ATTORNEY FOR DEFENDANT

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA

## WESTERN DIVISION

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Ronald C. Timmons
ron.timmons@usdoj.gov

Richard B. Evans
richard.b.evans@usdoj.gov
**Lauren Castaldi**
lauren.castaldi@usdoj.gov